No. 99-422

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 5

298 Mont. 1

994 P.2d 676

MONTANA ENVIRONMENTAL INFORMATION

INFORMATION CENTER, INC., and

PLAN HELENA, INC.

Plaintiffs and Appellants,

v.

MONTANA DEPARTMENT OF

TRANSPORTATION, and MONTANA

BOARD OF TRANSPORTATION

COMMISSIONERS,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jack R. Tuholske, Attorney at Law, P.C.; Missoula, Montana

David K. W. Wilson, Jr. and William S. Keller, Reynolds, Motl

and Sherwood; Helena, Montana

For Respondents:

Lyle Manley, Montana Department of Transportation; Helena, Montana

_____

Submitted on Briefs: December 2, 1999

Decided: January 11, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1.The Plaintiffs, Montana Environmental Information Center, Inc. (MEIC) and Plan Helena, Inc., commenced this action for declaratory judgment and injunctive relief in the District Court for the First Judicial District in Lewis and Clark County. They sought a determination that the Defendants, Montana Department of Transportation (Department) and Montana Board of Transportation Commissioners, violated the Montana Environmental Policy Act, and a preliminary injunction enjoining the Defendants from proceeding any further with the project known as the "Forestvale Interchange." The District Court denied relief following a hearing. Both parties then stipulated that denial of the preliminary injunction constituted a final disposition of the case. Plaintiffs appeal from that judgment. We reverse the judgment of the District Court.

¶2.The sole issue on appeal is whether the District Court erred when it held that the

Defendants were not required to prepare a supplemental environmental impact statement.

## FACTUAL BACKGROUND

¶3.This dispute relates to the Department's plan to revise and improve the transportation network in the North Helena Valley. The primary purpose of the plan is to improve safety and convenience by reducing traffic congestion on North Montana Avenue. Reduction of congestion is to be accomplished by increasing accessability to Interstate Highway 15. The proposed project would provide an interchange, known as the Forestvale interchange, north of Custer Avenue and provide access between Interstate 15, Montana Avenue, and Forestvale Road.

¶4.In 1991, a draft environmental impact statement (EIS) concerning the proposed Forestvale Interchange was approved by the Federal Highway Administration. The draft EIS evaluated four different alternatives. Each alternative contemplated building a new interchange along Interstate 15. Subsequently, in 1992 a final EIS was prepared and approved, accompanied by a Record of Decision which selected the Forestvale interchange as the course of action the Department would pursue. Between 1992 and 1996, the Department initiated preconstruction activities on the Forestvale interchange project, including design, preliminary surveys, and right of way acquisitions.

¶5.In late 1996, information began to surface from the Department of Transportation that the Forestvale interchange project may not as effectively address the traffic problems on North Montana Avenue as was originally anticipated in 1992. In an Opinion published in the *Helena Independent Record* by Marvin Dye, Director of the Montana Department of Transportation, Dye stated that "[b]ased on current information - what's actually happened and is likely to happen - Forestvale very likely won't have much impact on Helena's traffic problems."

¶6.In late November 1997, the Helena City Commission and the Board of County Commissioners of Lewis and Clark County passed a joint resolution based on their determination that an alternative package of improvements would more effectively address the immediate transportation and safety needs of the community than the Forestvale interchange. The joint resolution requested the Montana Transportation Commission to schedule and fund the alternative package as an alternative to the construction of the Forestvale interchange. The Joint Resolution provided four alternative projects to the Forestvale interchange: widen and construct turning lanes on North Montana Avenue;

realign the Frontage Road to Washington Street; construct turning lanes and install a traffic signal at the Custer Avenue and McHugh Drive intersection; or conduct a capitol interchange area traffic study and EIS.

¶7. On December 3, 1997, the Montana Transportation Commission considered the joint resolution's request that the Commission adopt an alternative to the Forestvale interchange. The Commission declined to adopt any of the alternatives proposed by the joint resolution and affirmed its decision to proceed with the Forestvale interchange.

¶8. Following the Commission's decision to proceed with the Forestvale project, the Department of Transportation conducted an in-house review to determine whether a supplemental EIS would be required pursuant to Rule 18.2.247 of the Montana Administrative Rules. In February 1999, as a result of its in-house reevaluation of the Forestvale interchange, the Department concluded that a supplemental EIS was not necessary "because the changes in the proposed project's Scope-of-Work and the new information or circumstances relevant to environmental concerns and bearings discussed below do not result in any significant environmental impacts."

¶9. As a result of the Department's decision in February 1999 that a supplemental EIS was not necessary, the Department decided to let the contract for the Forestvale interchange in April 1999. On April 22, 1999, the Plaintiffs, MEIC and Plan Helena, filed a complaint challenging the Defendants' approval of the proposed Forestvale Interchange on Interstate 15 in the Helena valley and the Defendants' decision not to prepare a supplemental EIS pursuant to the Montana Environmental Protection Act (MEPA). As a result of this lawsuit, the Department delayed letting the bids to Forestvale.

¶10. On May 26, 1999, the District Court held a hearing to consider the Plaintiffs' request for a preliminary injunction, as well as the Defendants' motion to dismiss the case. On June 21, 1999 the District Court issued its decision. It denied Plaintiffs' request for a preliminary injunction and denied Defendants' motion to dismiss. Both parties then agreed to adopt the District Court's opinion on the preliminary injunction as the final order in the case, and therefore, the District Court dismissed the action on July 2, 1999.

¶11. On July 6, 1999, the Plaintiffs moved the District Court for an injunction pending appeal pursuant to Rule 62(c) of the Montana Rules of Civil Procedure. Because the District Court did not immediately act upon the motion, the Plaintiffs filed an Application for an Injunction Pending Appeal in this Court on July 19, 1999. Following remand back

to the District Court, the District Court denied the Plaintiffs' motion. The Plaintiffs then reapplied to this Court for an injunction pending appeal, which we granted in part, allowing the Department to let the bid, but staying construction until resolution of this appeal.

## STANDARD OF REVIEW

¶12.The proper standard of review of an administrative decision pursuant to the Montana Environmental Protection Act (MEPA), is whether the agency decision was arbitrary or capricious. *North Fork Preservation Ass'n v. Department of State Lands* (1989), 238 Mont. 451, 465, 778 P.2d 862, 871. In *North Fork Preservation Ass'n*, we stated that:

[I]n making the factual inquiry concerning whether an agency decision was "arbitrary or capricious," the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." This inquiry must "be searching and careful," but "the ultimate standard of review is a narrow one."

*North Fork Preservation Ass'n, 238 Mont. at 465, 778 P.2d at 871 (citing Marsh v. Oregon Natural Resources Council (1989), 490 U.S. 360, 378).*

¶13.In *Marsh,* the U.S. Supreme Court stated:

[I]n the context of reviewing a decision not to supplement an EIS, courts should not automatically defer to the agency's express reliance on an interest in finality without carefully reviewing the record and satisfying themselves that the agency has made a reasoned decision based on its evaluation of the significance - or lack of significance - of the new information. A contrary approach would not simply render judicial review generally meaningless, but would be contrary to the demand that courts ensure that agency decisions are founded on a reasoned evaluation "of the relevant factors."

*Marsh, 490 U.S. at 378.*

## DISCUSSION

¶14.Did the District Court err when it held that the Defendants were not required to prepare a supplemental environmental impact statement?

¶15. The Plaintiffs contend that the Defendants' failure to prepare a supplemental EIS to analyze the alternatives that were developed, as a result of changed growth and traffic patterns, violated MEPA. The Defendants reply that the Department properly determined that a supplemental EIS was not necessary as a result of the Department's determination that there were no significant new circumstances bearing on the proposed project or its impacts, and that the project still met the purpose and needs as set forth in the final EIS prepared in 1992.

¶16. Rule 18.2.247, ARM, provides the following:

(1) The agency shall prepare supplements to either draft or final environmental impact statements whenever:

(a) the agency or the applicant makes a substantial change in a proposed action;

(b) *there are significant new circumstances, discovered prior to final agency decision, including information bearing on the proposed action or its impacts that change the basis for the decision;*

(Emphasis added).

¶17. Rule 18.2.247, ARM, further provides that:

(2) A supplement must include, but is not limited to, a description of the following:

(a) an explanation of the need for the supplement;

(b) the proposed action; and

(c) *any impacts, alternatives or other items required by ARM 18.2.243 for a draft EIS or ARM 18.2.245 for a final EIS that were either not covered in the original statement or that must be revised based on new information or circumstances concerning the proposed action.*

(Emphasis added.) Additionally, Rule 18.2.236(2)(a)(i), ARM, defines "alternative" as: "an alternate approach or course of action that would appreciably accomplish the same objectives or results as the proposed action."

¶18.The draft EIS for the Forestvale Interchange project was prepared in 1991. The "purpose of and need for action" section states that: "[a] primary purpose of the proposed project will be to improve safety and convenience by reducing traffic demand on the heavily traveled and deficient Montana Avenue by increasing accessibility and traffic demand on the under-traveled Interstate 15." The final EIS, prepared in 1992, states that:

Major intersections along the Montana Avenue corridor are experiencing capacity problems making north south travel difficult and growth in the North Helena Valley is increasing pressure on the corridor. Providing access to the interstate will alleviate pressure on Montana Avenue, shorten overall travel times, increase safety and minimize road user costs.

Clearly, the primary purpose of the Forestvale Interchange project was to lessen the traffic congestion on Montana Avenue by diverting traffic onto Interstate 15.

¶19.In 1997, the Montana Department of Transportation began to question the adequacy of the final EIS due to several changed conditions since the time the document was prepared in 1992. In a memorandum regarding a March 1997 meeting between members of the Montana Department of Transportation's Environmental Services and the Federal Highway Administration, MDT's Manager of Environmental Services, Joel Marshik, stated that "[t]he concern of MDT was the fact that the [Forestvale Interchange] project does not meet the purpose and need as presently stated [in the EIS]: to relieve congestion on Montana Avenue."

¶20.In an Opinion published in the *Helena Independent Record* on November 4, 1997, Marvin Dye, Director of the Montana Department of Transportation, questioned the effectiveness of the Forestvale Interchange project, in light of changed circumstances in the city of Helena over the past several years. Dye stated the following in his editorial:

There've been dramatic changes in Helena in the last few years. Traffic patterns and needs have changed dramatically since Forestvale was identified a decade or more ago. It looked like a good project then, but so much has changed now. Based on current information - what's actually happened and is likely to happen - Forestvale very likely won't have much impact on Helena's traffic problems.

When I talk about traffic problems, I'm talking mainly about the Capitol Interchange area and Fee Street near Albertson's/McDonald's, as well as the traffic around Montana and

Custer. All the growth around Shopko, County Market and the new Albertson's along north Montana weren't even on the horizon when Forestvale was planned. That area is a destination now for thousands of motorists.

¶21.Additionally, on November 17, 1997, the Helena City Commission and the Board of County Commissioners for Lewis and Clark County passed a joint resolution in which they requested the Montana Transportation Commission to schedule and fund a package of transportation improvements as an alternative to the construction of the Forestvale Interchange. The joint resolution stated the following:

NOW, THEREFORE, BE IT RESOLVED that the Lewis and Clark County Board of Commissioners and the City of Helena Commission that they have determined the alternative package of improvements outlined in Exhibit A, would more effectively address the immediate transportation and safety needs of the community than the Forestvale Interchange.

¶22.Moreover, in a letter to the Montana Board of Transportation Commissioners in which Dye sought the endorsement of the Board for the package of proposed projects, including widening North Montana Avenue, as an alternative to constructing the Forestvale Interchange, Dye stated:

It was MDT that first raised the issue; specifically, that the proposed Interchange will very likely not do what it was intended to - that the Forestvale Interchange won't deliver any substantial benefit. In raising the issue, we also made an offer - because of the unique and favorable circumstances, a project or projects that *will* make some difference can be substituted to make the very best use of limited funding.

¶23.Because the Montana Board of Transportation Commissioners voted in December 1997 to continue with the Forestvale Interchange project, rather than pursue one of the suggested alternatives, the Montana Department of Transportation initiated a reevaluation of the final EIS for the Forestvale Interchange. The purpose of the reevaluation was to ascertain whether the Department was required to prepare a supplemental EIS pursuant to Rule 18.2.247, ARM.

¶24.The documentation of the reevaluation demonstrates the Department's review of the following changed circumstances: updated traffic projections; growth and traffic patterns at the Capitol Interchange; and effects to the Cedar Street Interchange. There is no

discussion in the reevaluation of the proposed alternatives to the Forestvale Interchange, nor is there any significant discussion of the changed patterns of development in Helena since the 1992 final EIS. In the reevaluation the Department concluded that "a supplemental EIS will not be necessary because the changes in the proposed project's Scope-of-Work and the new information or circumstances relevant to environmental concerns and bearings discussed below do not result in any significant environmental impacts."

¶25. With regard to the Capitol Interchange, the reevaluation states:

Without the Forestvale Interchange, the intersection of the southbound off ramp with U.S. 12 would reach LOS F [the lowest category of service in the Department's ranking system of A through F. LOS F is a thoroughly congested, stop and go traffic flow, which increases air pollution, safety hazards and driver frustration,] in approximately fifteen years. With the Forestvale Interchange, the intersection would reach LOS F in five years during the morning peak and LOS F will be reached in ten years during the evening peak. This means that if Forestvale Interchange is constructed, traffic at the intersection will exceed capacity during the morning peak after five years. At the end of ten years, the intersection will exceed capacity during the evening peak if no improvements are made.

The Capital Interchange will degrade with or without Forestvale Interchange and while the impacts will be noticeable, they are not considered significant.

¶26. The District Court concluded that the Department gave a "sufficient enough hard look at the new traffic information" and because "the decision not to supplement the EIS was based on a consideration of the relevant factors (traffic studies) and there has been no showing that there has been a clear error of judgment," the Department was not required to supplement the EIS.

¶27. In deciding whether the decision not to supplement the EIS was arbitrary or capricious, we are guided by the language in *Marsh*, 490 U.S. at 378, in which the U.S. Supreme Court stated, in the context of reviewing a decision not to supplement an EIS, that courts must satisfy themselves "that the agency has made a reasoned decision based on its evaluation of the significance - or lack of significance - of the new information". Additionally, as stated in *North Fork Preservation Ass'n*, 238 Mont. at 465, 778 P.2d at 871, "the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

¶28.Our review of the Department's decision not to supplement the EIS leads us to conclude that the Department did not make a reasoned decision based on all relevant factors when it concluded that a supplemental EIS was not necessary.

¶29.We conclude that the change in traffic patterns, the development around the Capitol Interchange, the patterns of development in Helena, and the proposed alternatives to Forestvale, specifically the Montana Avenue alternative, were all significant new circumstances which required a supplemental EIS pursuant to Rule 18.2.247, ARM. We further conclude, therefore, that the Department's decision to not prepare a supplemental EIS was arbitrary and did not comply with the requirements of Rule 18.2.247, ARM. Accordingly, we reverse the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice W. William Leaphart, dissenting.

¶30.I dissent.

¶31.The Court cites Rule 18.2.247(1), ARM, which requires that an agency shall prepare supplements to a final EIS whenever "there are significant new circumstances, discovered prior to final agency decision, including information bearing on the proposed action or its impacts that change the basis for the decision;" and Rule 18.2.247(2), ARM, which provides that a supplemental EIS must include a description of any alternatives. In concluding that the Department should have prepared a supplemental EIS, the majority places considerable stock in the fact that the Helena City Commission and the Board of County Commissioners of Lewis and Clark County passed a joint resolution expressing their determination that an alternative package of improvements would more effectively address the transportation and safety needs than the Forestvale Interchange. The Court further emphasizes that this joint resolution was rejected by the Montana Transportation

Commission and that the Department's subsequent reevaluation of the EIS did not discuss the proposed alternatives to the Forestvale Interchange.

¶32. As I read Rule 18.2.247(2), ARM, the requirement that the agency describe alternatives only pertains if it is first determined that a supplemental EIS is required under Rule 18.2.247(1), ARM. In other words, the fact that alternatives to the Forestvale Interchange were proposed is not a basis for determining that a supplemental EIS is required in the first instance. The necessity of a supplemental EIS hinges, not upon proposed alternatives, but upon significant new circumstances which affect the environment in ways not already considered.

¶33. In *Marsh v. Oregon Natural Resources Council* (1989), 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377, the United States Supreme Court held that an agency need not supplement an EIS every time new information comes to light after an EIS is finalized. "To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh*, 490 U.S. at 373. The Court continued:

In this respect the decision whether to prepare a supplemental EIS is similar to the decision whether to prepare an EIS in the first instance: If there remains "major Federal actio[n]" to occur, and if the new information is sufficient to show that the remaining action will "affec[t] the quality of the human environment" in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared.

*Marsh, 490 U.S. at 374.*

¶34. In determining that a supplemental EIS was not necessary, the Department conducted a reevaluation in February 1999, in which it considered whether recent growth and traffic patterns in the Helena area defeated the purposes and needs outlined in the EIS. As Chief Justice Turnage notes in his dissent, using the new 1999 traffic data, the Department came to the conclusion that the Forestvale project would relieve congestion on North Montana Avenue by 30 to 50 percent. It also concluded that the project would reduce traffic in front of Rossiter School by 58 percent and would not significantly affect the Capitol Interchange, which would have to be reconstructed in any event for unrelated reasons.

¶35. While one can dispute the correctness of the Department's conclusions, it cannot be said that the Department did not take a hard look at the significance of any possible new

impacts or that its decision to forego a supplemental EIS was arbitrary and capricious. *See North Fork Pres. v. Dept. of State Lands* (1989), 238 Mont. 451, 459, 778 P.2d 862, 867. MEIC has not pointed to any new information or circumstances showing that the Forestvale project will affect the environment in a significant manner not already considered in the original EIS. The "Montana Avenue Alternative" is not itself a "new circumstance" triggering a need for a supplemental EIS under Rule 18.2.247(1), ARM.

¶36. I would affirm the decision of the District Court.

/S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage and Justice Karla M. Gray join in the foregoing dissenting opinion.

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

Chief Justice J.A. Turnage dissents.

¶37. It is undisputed that a complete study of the need for and environmental impact of the proposed Forestvale Interchange project was conducted in 1991 and 1992. The extensive re-evaluation conducted by the Department of Transportation in 1999 led the Department to conclude that there was no change of circumstances justifying a supplemental environmental impact statement. In my view, the Department's reliance on its experts to reach that conclusion was neither arbitrary nor capricious. Therefore, under our standard of review, it must not be overturned.

¶38. A supplemental environmental impact statement is required only when significant new circumstances bear on the proposed action or its impacts. *See* Rule 18.2.247, A.R.M. While the plaintiffs may not agree with the results, it cannot be denied that the Department thoroughly searched for possible significant new circumstances in 1999, and found none. Simply because an agency takes another look at a proposed project and publicly questions some of its assumptions does not mean that significant new circumstances exist.

¶39. In this case, the record establishes that the Department's February 1999 evaluation looked at recent traffic data to determine whether the growth patterns in the Helena area had resulted in the Forestvale Project becoming unnecessary to the purpose and needs of

the final environmental impact statement. The new analysis used 1999 traffic data and came to the conclusion that the project would relieve congestion on North Montana Avenue by 30 to 50 percent and would reduce traffic in front of Rossiter School by 58 percent.

¶40. Moreover, the analysis concluded that the project would not significantly affect the Capitol Interchange. The report makes clear that the Capitol Interchange needs to be reconstructed in any event, because of factors unrelated to the Forestvale Interchange such as the need for seismic retrofitting and to accommodate pedestrians. The report states that the main vehicular traffic congestion at the Capitol Interchange is at the northbound on-ramp and the northbound off-ramp, both of which are on the east side of the interchange. The addition of traffic on the southbound off-ramp on the west side of the interchange as a result of the Forestvale Interchange will not influence the time frame under which a redesign of the Capitol Interchange must occur. The many other problems with the Capitol Interchange would make it necessary to reconstruct the interchange before the additional traffic as a result of the Forestvale Interchange would require reconstruction.

¶41. The reevaluation also considered whether there were any new impacts from the Forestvale Interchange upon the Cedar Street Interchange, and foresaw both benefits and nonsubstantial negative impacts upon that interchange. The report then went on to discuss any possible new impacts to land use, social and economic matters, noise, water quality, wetlands, historical and archaeological preservation, relocation, air quality, permits, public comments and coordination, and cumulative impacts. The report requested the concurrence of the Federal Highway Administration (FHWA) that the new information or circumstances relevant to environmental concerns and bearings do not result in any significant environmental impacts. FHWA concurred.

¶42. The existence of other proposals for highway improvements in the Helena area (which the plaintiffs refer to as "alternatives," including widening Montana Avenue) does not render the decision not to perform a supplemental environmental impact statement arbitrary or capricious. It is significant that the purposes for this project as documented in the original EIS include not only to relieve congestion on Montana Avenue, but also to provide quicker access and better response time for fire department and other emergency vehicles.

¶43. Nor do off-the-cuff statements of one individual, even the Director of the Department of Transportation, negate his own agency's technical study. The District Court noted that

in Director Marv Dye's deposition, he made it clear that his 1997 statements relating to the impact of the Forestvale Interchange on the traffic on Montana Avenue were nothing more than generalization and speculation.

¶44. An agency decision not to supplement an EIS in light of new information is reasonable when the agency has carefully considered the information, evaluated its impact, and supported its decision not to supplement with a statement of explanation. *Animal Defense Council v. Hodel* (9th Cir. 1988), 840 F.2d 1432, 1438. Like the District Court, I would conclude that the Department did not act arbitrarily, capriciously, or unlawfully in reaching its February 1999 decision that a supplemental environmental impact statement was not necessary.

¶45. It does not require a panel of highway construction experts to determine that traffic flow on North Montana Avenue has surpassed acceptable safety standards. This can be readily ascertained by asking any of the local residents required to daily travel this road. The sad result of this decision is to delay any improvement of this traffic nightmare for, in all probability, years to come. After new studies, public meetings, and environmental impact statements have been conducted, another lawsuit will surely be filed seeking further supplemental environmental impact statements. This road leads to nowhere. I therefore respectfully dissent.

/S/ J. A. TURNAGE